NEUSTETER SUIT CO., WOMEN'S APPAREL CO., AND WEAKLEY CLOAK & SUIT CO., PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 4001. Promulgated October 4, 1927.

Petitioners' inventories approved.

*Joseph S. Jaffa, Esq.*, and *R. M. Crane, C. P. A.*, for the petitioners.
*A. G. Bouchard, Esq.*, for the respondent.

This is a proceeding for the redetermination of deficiencies in income and profits taxes for the years 1918 and 1919 in the respective amounts of $7,016.68 and $22,563.80. Three grounds of error are alleged: (1) revision of inventory; (2) disallowance as business expense of certain contributions, and (3) recomputation of invested capital. At the hearing the petitioners conceded the correctness of the Commissioner's disallowance of the contributions.

### FINDINGS OF FACT.

The petitioners were affiliated Colorado corporations with principal offices in Denver. In the taxable years 1918 and 1919 they were

engaged in the sale at retail of women's ready-to-wear apparel. The Neusteter Suit Co., the parent company, was organized in 1911. In 1916 it organized the Neusteter Women's Apparel Co., and in 1917 it organized the Weakley Cloak & Suit Co. Both of the latter companies have since gone out of business.

For the taxable years petitioners made consolidated income-tax returns, in which inventories of merchandise were included for the purpose of determining income.

Because of the rapid changes in styles and the brief period of seasonability of much of the merchandise handled by the petitioners there was no stability to the market and in most instances no replacement cost was available. Reorders of identical garments were seldom made, and the same style garments, as a rule, were not available for replacement from manufacturers.

The petitioners were regularly advised of the New York and general market conditions, prices and styles affecting their merchandise through associations and connections to which they subscribed.

Petitioners' opening and closing inventories for the taxable years were taken by valuing each article of merchandise separately. The buyer in each department would examine each article and call it to an assistant. The article was entered upon a form inventory sheet and the retail sale value thereof, determined in the light of special conditions applicable to that article, was also entered on the sheets. Articles of a like kind, quality and condition were grouped in the inventory. The inventory valuation thus arrived at represented the retail sale value of the merchandise, when that value was less than the cost, or the cost of the merchandise when the retail sale value exceeded the cost. The inventories thus made up were totaled and the totals entered upon the books of the petitioners.

The inventory sheets for the years 1918 and 1919 were lost or destroyed and could not be produced by petitioners at the time of the examination of petitioners' records by the Government agents in 1923. All of the merchandise listed upon the inventory sheets for the taxable years was disposed of prior to 1923, and could not have been identified in 1923 by such inventory sheets.

Petitioners have used the same method of inventorying merchandise consistently before, during and after the taxable years. They used the same inventory valuations for all purposes—income-tax returns, financial statements, and credit reports.

The method of taking and valuing inventories employed by the petitioners is the one used by the leading dealers in women's ready-to-wear apparel in Denver, and generally in the trade.

The opening and closing inventories of petitioners as shown by their books for the taxable years were:

| As of December 31 | Neusteter Suit Co. | Weakley Cloak & Suit Co. | Neusteter Women's Apparel. | Consolidated. |
|---|---|---|---|---|
| 1917 | $41,922.23 | $4,795.61 | $6,513.04 | $53,230.88 |
| 1918 | 47,020.07 | 7,034.43 | 14,067.77 | 68,122.27 |
| 1919 | 99,802.88 | 12,917.37 | None. | 112,720.25 |

The respondent rejected the inventory valuations of the petitioners and readjusted the inventories for the taxable years upon a percentage basis. The respondent determined the ratio of gross sales to gross profits for the years 1916 to 1919, inclusive, and, applying that ratio to the taxable years, fixed the inventory values for those years. By reason of these adjustments to the inventories, the respondent reduced the invested capital of the petitioners for the taxable years and determined the deficiencies in taxes above set forth.

## OPINION.

VAN FOSSAN: The sole question for determination is whether or not petitioners complied with the provisions of the law in the matter of inventory valuations for the years 1918 and 1919. The issue relative to the invested capital hinges upon, and is automatically disposed of by a decision of the question of inventories. All other issues were abandoned at the hearing.

Section 203 of the Revenue Act of 1918 provides that in certain events inventories shall be taken "upon such basis as the Commissioner, with the approval of the Secretary, may prescribe as conforming as nearly as may be to the best accounting practice in the trade or business and as most clearly reflecting the income." By this delegation of authority, subject to the two express limitations contained in the statute, the power to choose among the various methods of taking inventories is conferred on the Commissioner. The Commissioner pursuant to the above grant of authority has prescribed two methods for general application, subject to certain specific exceptions not here applicable. These methods are (1) "cost," or (2) "cost or market, whichever is lower." If a taxpayer took its inventories in accordance with either method it conforms to the statute and regulations.

In article 1584 of Regulations 45, the Commissioner has defined "market" as follows:

Under ordinary circumstances, "market" means the current bid price prevailing at the date of the inventory for the particular merchandise in the volume in which ordinarily purchased by the taxpayer * * *.

That this definition could not have universal application is indicated by the opening clause, "under *ordinary* circumstances." If extraordinary circumstances exist, we must look beyond the quoted definition. The Commissioner has recognized that the definition is necessarily elastic, and in the same regulations it is further provided:

Where no open market quotations are available, the taxpayer must use such evidence of a fair market price at the date or dates nearest the inventory as may be available * * *. Where, owing to abnormal conditions, the taxpayer has regularly sold such merchandise at prices lower than the current bid price as above defined, the inventory may be valued at such prices * * *.

The essential inquiry in every case involving the use of inventories claimed to have been taken at "cost or market, whichever is lower," is to determine whether or not the market value used represents the fair market value of the merchandise under the peculiar facts and circumstances of the particular case. In *Appeal of C. Willenborg & Co.*, 5 B. T. A. 788, we held that the two bases of valuation announced by the Commissioner are not exclusive of all others, and that a taxpayer may employ any basis (1) that conforms as nearly as may be to the best accounting practice in the trade or business, and (2) that most clearly reflects true income.

The uncontradicted evidence in this case is that the method employed by petitioner was generally used in the trade or business in which petitioner was engaged. There is no evidence before us to dispute the contention that it conformed to the best accounting practice in that trade or business. It was consistently employed by petitioners, before, during, and after the taxable years and the inventory so arrived at was used for all business purposes—income-tax returns, credit statements and financial reports.

This Board has emphasized repeatedly the importance of consistency in the method of inventorying.

However faulty the taxpayer's inventory method was, we believe that greater weight should be given to consistency than to any particular method of inventorying or basis of valuation so long as the method or basis used substantially reflects the income. This rule has been given great weight both by the Commissioner and the Board. *Appeal of The Buss Co.*, 2 B. T. A. 266, 268.

See also *Appeal of Thomas Shoe Co.*, 1 B. T. A. 124; and *Appeal of Boyne City Lumber Co.*, 7 B. T. A. 36.

In this case the facts establish that there was no replacement market price for much of the petitioners' merchandise and that reorders could not be made. There was, therefore, no "market" in the usual interpretation of that term. In this situation petitioners determined the retail sales value of its merchandise as set forth in the findings of fact and used this, or cost, whichever was lower, as the

basis of its inventory. We believe that under all the circumstances there was a substantial compliance with the law.

That "market value" for inventory purposes generally means the replacement cost to the taxpayer or the price at which the taxpayer may replace the particular goods by purchase in the open market is not disputed. Where, however, the merchandise is not available for reorders and there is no replacement market, the general rule fails to meet the situation and it becomes necessary to seek another basis for measuring market value. Merchandise such as that here involved is not valueless merely because no market value, in the general sense of that term, is determinable, nor do such facts justify the exclusion of such merchandise from the inventory. Conversely, there is no justification for requiring the inclusion of such merchandise in the inventory at cost, or some theoretical market value, greater than its actual value. To do so would distort income. When petitioners fixed and entered on the inventory sheets the price at which an article of merchandise could be moved, they were in practical effect determining the "market" on that article. The only way, if at all, petitioners could have replaced much of their merchandise was to buy from other retail stores handling the same lines of goods. In such event, obviously, the replacement price to them would be the retail or sales price of his competitor. The result is the same precisely as that arrived at by petitioners' method.

The Board has heretofore recognized resale or retail sales value as a proper criterion of market value for inventory purposes, in those cases where the goods are obsolete or affected by other conditions so that they are not available in the replacement market. In the case of an automobile dealer who accepted used cars in part payment for new cars and valued such used cars for inventory purposes at their resale value, which was less than the "trade-in" or cost value, the Board held:

The taxpayer took its inventories of new cars, tractors, and implements on the basis of cost or market, whichever was lower. Its inventory of used cars was taken on the basis of market values which were uniformly less than the "trade-in" values. In the absence of evidence that the inventories of used cars were taken at more than the market the taxpayer's determinations of such market values are approved. *Appeal of Adams Motor Co.*, 4 B. T. A. 589, 595.

In two earlier cases the Board recognized the propriety under certain circumstances, of measuring market value by retail sales value. *Appeals of Summit Wholesale Grocery Co.*, 1 B. T. A. 1040, and *American Mills Co.*, 2 B. T. A. 460.

In our opinion the sale value of merchandise as determined by the petitioners represented its fair market value and where such value was less than cost it was properly used for inventory purposes. We

are further of the opinion that petitioners' inventories consistently taken upon such basis would most clearly reflect income. The Commissioner erred in rejecting the inventories.

Reviewed by the Board.

*Judgment will be entered on 15 days' notice, under Rule 50.*